FOSTER et al. v. HOME INS. CO. OF CITY OF NEW YORK.

(Circuit Court of Appeals, Third Circuit. January 30, 1906.)

No. 53.

INSURANCE—CONDITIONS OF FIRE POLICY—FALL OF BUILDING.

Instructions in an action to recover on a fire insurance policy construing and giving effect to a provision of the policy that "if a building or any part thereof fall, except as a result of fire, all insurance by this policy on such building or its contents shall immediately cease," reviewed and approved under uncontradicted evidence showing that a substantial part of the building fell as the result of structural weakness before the fire originated which destroyed the insured property therein.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Charles P. Orr, for plaintiffs in error.
Willis F. McCook, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. This was an action brought by the plaintiffs below (who are the plaintiffs in error) upon a policy of fire insurance, issued to the plaintiffs by the defendant, to recover damages for the loss of certain personal property. The insured property was

contained in two adjoining buildings, Nos. 527 and 529 Wood street, Pittsburgh, used connectedly as a printing establishment and stationery store. The buildings were of brick and four stories in height. Between them was a 13-inch brick partition wall, extending through all the stories to the roof, upon which the floors of both buildings rested. The joists of the floors extended from each side wall over to this partition wall, their ends resting thereon. By means of arched openings cut in this wall the two establishments were connected. On the floors of these buildings were printing presses, type and type-presses, folding and other machinery, and stock of paper.

The policy contained the following clauses:

"If a building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease."

"This company shall not be liable for loss caused directly or indirectly by invasion * * * or (unless fire ensues, and, in that event, for the damage by fire only), by explosion of any kind."

About 1 o'clock on the night of February 3, 1901, the watchman at these establishments discovered that this partition wall was cracking and something falling, and he left the building and went to the other side of Wood street. A telephone message summoning the city superintendent of the bureau of building inspectors, Capt. J. A. Brown, was immediately sent. The superintendent reached the premises and entered the buildings about a quarter after 2 o'clock and found (to quote his own language) that "the center or division wall between the two buildings was crushing." In his testimony he thus described the situation disclosed upon his inspection then made:

"I could see that the wall for about 10 or 12 feet, running from the front towards the rear, had split from the ceiling down, and that 9 inches of that 13-inch wall for about four or five feet from the ceiling, had fallen down. This was the noise that had been made. The four inches was buckled; the weight of the floors was resting on those four inches, and it was buckled into the other room in that shape (indicating)."

The building inspector summoned the manager of the firm and advised him to get Mr. Eichleay, who was engaged in work nearby, to shore up the building. Accordingly, Eichleay was employed to do this, and he and his workmen soon started to work. While they were at work, about 9:30 o'clock, a. m., the partition wall gave way and the upper floors came down. The front part of the buildings, for the distance of about one-third of their length back toward the rear, fell. Almost immediately after the fall, a small fire started in the débris on the first floor a short distance back from the front and spread very rapidly, the flames soon mounting up to the top of the standing walls.

The foregoing stated facts were established indisputably by uncontradicted testimony of eye witnesses. There was no evidence to show that any fire occurred before the fall of the buildings. It was not shown that any explosion occurred. The theory of explosion was without basis. It seems to have arisen from the fact that some of the witnesses, in speaking of the crash caused by the fall of the buildings, employed the word "explosion" as indicating the noise. Under a

charge as favorable to the plaintiffs as at all admissible, the jury rendered a verdict for the defendant. There is no assignment of error to the charge. The assignments go to the answers to the three following points:

"(1) The court erred in answering plaintiffs' first point, which point and answer are as follows: If the jury find that the fire which resulted in the destruction of the plaintiff's goods covered by the policy of insurance in this case preceded the fall of the building, then the plaintiff is entitled to recover. Answer: This point is affirmed if the jury also find that the fall of the building was the result of that fire."

We are of opinion that there was no reversible error in this answer in view of the uncontradicted evidence. Upon a most careful consideration of the case we are entirely satisfied that there was no evidence to justify a finding either that any fire preceded the fall of the buildings or that any explosion occurred. There was no evidence, therefore, to justify this point.

"(2) The court erred in answering the second point of the defendant, which point and answer thereto are as follows: If the jury find that the building containing the insured property fell, or any part of it fell, from any cause other than fire, then the insurance and the defendant's liability fell with it, and the verdict must be for the defendant. Answer: This point is affirmed. As we have stated in the general charge, the policy provides, 'if a building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease.'"

We see no ground of objection to this answer. It simply affirmed the plain provision of the policy. If the plaintiffs desired any more specific instruction as to the meaning of the words "or any part thereof fall," they could have asked for the same. Moreover, under the proofs there was no question as to the fall being of a material and integral part of the buildings.

"(3) The court erred in answering defendant's fourth and last point, which point and answer are as follows: As the evidence is uncontradicted that a substantial part of the building fell, before the plaintiffs can recover they must show that its fall was caused by the fire alone and not by explosion or crushing of the building. Answer: That point is affirmed."

The court was quite right in saying that the evidence was uncontradicted that a substantial part of the building fell. In the general charge the judge explicitly instructed the jury that the burden of proof that the case was within one of the exceptions of the policy was on the defendant. Fairly read, this fourth point does not assert or imply anything to the contrary of that instruction. We think this answer is free from error. Finally, in overruling the assignments of error, we have only this to add, that in our judgment it was clearly shown by uncontradicted evidence that the fall of the buildings was not the result of fire but was altogether owing to inherent weakness or defects of construction, that the fire which destroyed the plaintiffs' property was not caused by explosion, and that the fire originated after the fall of the buildings. Accordingly the policy by its express provisions was not in force at the time of the loss.

The judgment of the Circuit Court is affirmed.